C. Marie Eckert, P.C., OSB No. 883490
marie.eckert@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  503.224.5858
Fax:  503.224.0155

Kay M. Brady (*pro hac vice* pending)
Michael J. Lynch (*pro hac vice* pending)
D. Syed Ali (*pro hac vice* pending)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Telephone:  (412) 355-6500

Attorneys for Plaintiffs Kaiser Gypsum Company,
Inc. and Hanson Permanente Cement, Inc.

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>OUT OF DISTRICT & BANKRUPTCY CASE<br><br>KAISER GYPSUM COMPANY, INC., and HANSON PERMANENTE CEMENT, INC. (f/k/a Kaiser Cement Corporation),<br><br>        Debtors.<br><br>KAISER GYPSUM COMPANY, INC., and HANSON PERMANENTE CEMENT, INC. (f/k/a Kaiser Cement Corporation),<br><br>        Plaintiffs, | Case No. 00-99999-rld7<br><br>Adv. Proc. No. 16-03127-rld<br><br>Chapter 11<br><br>PLAINTIFFS' BRIEF IN OPPOSITION TO LONDON MARKET INSURERS' MOTION TO TRANSFER VENUE<br><br>JURY TRIAL DEMAND<br><br>Telephonic Hearing Date:  November 14, 2016<br>Hearing Time:  10:00 a.m. |

**Page 1 of 19**  Plaintiffs' Brief in Opposition to London Market Insurers' Motion to Transfer Venue

70133163.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Case 16-03127-rld    Doc 28    Filed 11/03/16

v.

AIU INSURANCE COMPANY et al.,

Defendants.

# I.     __INTRODUCTION__

This case should stay in Oregon.[1]  It is an insurance coverage case involving coverage for environmental cleanup costs at a contaminated Oregon property,[2]  governed by Oregon state law, and filed in Oregon state court by the Debtors Kaiser Gypsum Company ("Kaiser Gypsum") and Hanson Permanente Cement ("Kaiser Cement," collectively with Kaiser Gypsum, the "Debtors") prior to initiation of the Bankruptcy Cases.  The Debtors' insurers seek to avoid jurisdiction in Oregon and have now attempted twice to move this case to other jurisdictions (first California, and when that attempt failed, now North Carolina).  As with the prior attempt, this second attempt by the insurers to shop forums should be rejected, and the case should remain in Oregon because Oregon is the most logical, efficient, and fairest jurisdiction for the courts and the parties in interest.

The Debtors initiated this insurance coverage action in the Circuit Court of the State of Oregon for the County of Multnomah for multiple reasons, including the following:

- The St. Helens Site is located in Oregon and is one of two environmental sites (the other is in the State of Washington) that is the subject of this coverage dispute;

---

[1] The Debtors intend shortly to file a motion to remand this action to the state court.

[2] The coverage action involves two sites: (i) a 75 year-old manufacturing facility located in St. Helens, Oregon (the facility itself and the surrounding area at which there is alleged environmental property damage for which Kaiser Gypsum may be liable are referred to herein as the "St. Helens Site"), and (ii) former cement, gypsum and gypsum accessory manufacturing facilities and related areas located along the Lower Duwamish Waterway in Seattle, Washington (the facilities themselves and the surrounding area at which there is alleged environmental property damage for which Kaiser Gypsum and Kaiser Cement may be liable are referred to herein as the "LDW Site").  Complaint, ¶ 2.

**Page 2 of 19**  Plaintiffs' Brief in Opposition to London Market Insurers' Motion to Transfer Venue

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204
70133163.1

- The Oregon Environmental Cleanup Assistance Act, ORS 465.475 et seq. (the "OECAA") expressly provides that Oregon law applies to insurance coverage disputes for environmental property damage claims involving a site in Oregon;

- Oregon law on environmental insurance coverage disputes is well established since the OECAA has determined the outcome of a host of key insurance coverage issues that are hotly contested in other jurisdictions; and

- The OECAA and cases interpreting it provide precedent that the Debtors believe is favorable to their position with respect to the coverage issues that may be in dispute and, in the Debtors' view, this precedent maximizes their prospects for preserving this important asset for the benefit of their respective estates.

By their notice of removal and motion to transfer venue ("Motion to Transfer"), Defendants Certain Underwriters at Lloyd's, London and Certain London Market Companies ("London Market Insurers") seek to transfer the venue of this action to the Western District of North Carolina where the Debtors' chapter 11 cases are pending. They make this request by misleadingly implying that the Oregon state court (or any court in Oregon for that matter) has no interest in this coverage dispute. Tellingly, the London Market Insurers fail to disclose that one of the two environmental sites at issue in this case is physically located in Oregon.

Although the London Market Insurers primarily argue that their request for relief will promote "the economic and efficient administration of the estate," they provide only conclusory statements in support of that position and no affidavits or other evidence. Contrary to the position of the London Market Insurers, transfer to North Carolina would serve only to complicate the resolution of the coverage action. It could lead to choice of law disputes and, because this action is non-core and the parties have not consented to the entry of final orders, would likely result in costly and inefficient bifurcated litigation with some aspects of the case proceeding in the North Carolina Bankruptcy Court while others, including the jury trial, proceeding in the North Carolina District Court. Transfer would also require the North Carolina Bankruptcy Court and the North Carolina District Court to apply state law to a complex case that is – by the London Market Insurers' own admission – only "related to" the Bankruptcy Cases. In

70133163.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

short, a transfer of this action to the Bankruptcy Court would not serve the interests of justice, but instead would serve only the interests of the London Market Insurers and their co-defendant insurers in this obvious attempt to avoid Oregon's well-developed and pro-policyholder insurance coverage law. And there can be no doubt that avoiding Oregon law is the objective of the London Market Insurers: they previously filed a competing coverage action in California state court the day after the Debtors commenced this action in Oregon.[3] When that attempt failed, they removed the case and filed the instant Motion to Transfer.

The London Market Insurers further argue that venue should be transferred for the convenience of the parties. Again, the support for this argument consists of nothing but conclusory statements unsupported by any evidence. As with their assertions regarding the interests of justice, the London Market Insurers omit key facts, including:

- the majority of witnesses who will provide testimony regarding the St. Helens site are located in Oregon; and

- the repository for most of the documents relating to the St. Helens site is in Oregon.

Rather than supporting a transfer of venue, the salient facts establish that Oregon is the best forum for resolution of the Debtors' state law claims for coverage.

The London Market Insurers' Motion to Transfer should be denied.

## II.     BACKGROUND

### A.     The Debtors' State Court Insurance Coverage Action

On September 29, 2016, the Debtors initiated this coverage action for declaratory relief pursuant to Oregon's Uniform Declaratory Judgments Act, ORS 28.010, et seq., and for

---

[3] As a courtesy and pursuant to a non-disclosure agreement, the Debtors informed their insurers of the commencement of this action on September 29. That courtesy was returned with the filing of a competing action in California late the next day, mere minutes before the Debtors filed their voluntary petitions. Declaration of Charles E. McChesney II ("McChesney Dec."), ¶ 12. Likely because that California action is now subject to the automatic stay, the London Market Insurers have now opted for "Plan B," using removal and the Motion to Transfer to avoid the application of Oregon law in favor of some other law they perceive as more favorable to their misguided position that no coverage exists.

70133163.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

breach of contract in Oregon state court. The Debtors seek a declaration under state law that they are entitled to coverage under more than 100 insurance policies issued by dozens of insurers for costs that the Debtors have incurred and will incur at two environmental cleanup sites, including the St. Helens Site in Oregon. In addition, the Debtors seek relief and damages in the action based on certain insurers' breach of their policy obligations by failing to provide coverage for liabilities and losses incurred and to be incurred by the Debtors as a result of alleged environmental property damage at the Sites.

## B.      The Bankruptcy Cases

On September 30, 2016, Kaiser Gypsum and Kaiser Cement each filed a petition for Chapter 11 bankruptcy relief in the Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Cases"). In the Bankruptcy Cases, the Debtors intend to seek confirmation of a plan of reorganization in order to establish a Section 524(g) trust for the payment of current and future asbestos claims. The Debtors also intend to seek a bar date for non-asbestos claims and a discharge of their liabilities at the two environmental Sites.

## C.      The Bankruptcy Court Has Limited Jurisdiction Over This Action

This insurance coverage action was filed before the Bankruptcy Cases were initiated and involves issues of state law that would exist regardless of whether the Bankruptcy Cases had been initiated. The London Market Insurers admit that this is a non-core proceeding (Notice of Removal at ¶¶ 8-9) as it is not one "arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157 (b)(1); *see In re GACN, Inc.*, 555 B.R. 684 (9th Cir. B.A.P. 2016) (determining that a declaratory relief action involving a pre-petition insurance contract was not a "core" proceeding). Indeed, this action involves neither a cause of action created or determined by a statutory provision in the Bankruptcy Code nor an administrative matter that could not exist outside of the Bankruptcy Cases. *See, e.g., In re Ray*, 624 F.3d 1124, 1131 (9th Cir. 2010); *Bethlahmy v. Kuhlman (In re ACI-HDT Supply Co.)*, 205 B.R. 231, 234-35 (B.A.P. 9th Cir. 1997).

70133163.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

The parties do not dispute that the Bankruptcy Court has "related to" jurisdiction. However, there is no question that the Bankruptcy Court's jurisdiction over "related to" actions is necessarily limited in nature, particularly where, as here, neither the London Market Insurers nor the Debtors have consented to entry of final orders or final judgment by the Bankruptcy Court and the Debtors are seeking a jury trial. *See* 28 U.S.C. § 157(c). It cannot credibly be disputed that to transfer a state court action based solely on state law to a federal bankruptcy court in another jurisdiction that cannot enter final judgment or provide the parties with a jury trial would be less efficient than allowing the Debtors to go forward in their chosen venue, where they can have a jury trial in the same court that would preside over pre-trial matters. *See, e.g., In re Pluma, Inc.*, 2000 WL 33673752 (Bankr. M.D.N.C. Sept. 15, 2000) (deciding to abstain and remanding back to state court where jury trial had been demanded and the parties had not consented to the Bankruptcy Court entering judgment).

### III.    AUTHORITY AND ARGUMENT

#### A.    The Court Should Apply 28 U.S.C. § 1404 to the Motion to Transfer

In considering the motion to transfer, the Court should apply 28 U.S.C. § 1404(a), which provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district … where it might have been brought …." The London Market Insurers argue that the Court instead should apply 28 U.S.C § 1412, which provides that the "court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." (Emphasis added). However, this action is not "a case or proceeding under title 11," but rather a state law insurance action that exists independently of the Bankruptcy Cases (and was in fact filed before the Bankruptcy Cases were filed). Therefore, the Court should instead look to 28 U.S.C. § 1404(a). *See Ni Fuel Co. v. Jackson*, 257 B.R. 600, 622 (N.D. Okla. 2000) (recognizing the split of authorities but finding the reasoning of applying § 1404 more persuasive); *Tultex Corp. v. Freeze Kids, L.L.C.*, 252 B.R. 32, 35 (S.D.N.Y. 2000) ("[A]s the

**Page 6 of 19**  Plaintiffs' Brief in Opposition to London Market Insurers' Motion to Transfer Venue

70133163.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

plain language of the statute suggests, § 1412 applies only to 'core' bankruptcy proceedings."); *Searcy v. Knostman*, 155 B.R. 699, 707 (S.D. Miss. 1993) ("[D]isputes relative to change of venue in 'related to' proceedings should be governed by 28 U.S.C. § 1404(a)[.]"). [4]

        There are notable distinctions in the application of the two legal standards. First, § 1404(a) expressly states that the Court may only exercise its discretion to transfer to another district "where [the action] might have been brought." As explained further below, application of § 1404(a) would preclude transfer to federal court in North Carolina because the Debtors could not have brought this state law action there, as no diversity jurisdiction exists in North Carolina. Second, although § 1412 is framed in the disjunctive, this is a distinction without meaning here because both "the convenience of parties" and "the interest of justice" weigh against transfer.[5] Third, analysis under § 1412 implicates a presumption in favor of the Bankruptcy Court, but that presumption should not be applied here because (a) the Debtors prefer to have this action proceed in Oregon state court, (b) this is not a core proceeding, and (c) any such presumption would not overcome the overwhelming evidence that venue in Oregon is both in the interests of justice and more convenient for the parties.

## B.      The London Market Insurers Have Not Met Their Burden of Proof

        Regardless of which transfer provision the Court applies, the London Market Insurers bear the burden of proving by a preponderance of the evidence that transfer is warranted. *See, e.g., TIG Ins. Co. v. Smolker*, 264 B.R. 661, 668 (Bankr. C.D. Cal. 2001); *see also Adidas Am., Inc. v. Athletic Propulsion Labs, LLC*, No. 3:16-CV-00415-HZ, 2016

---

[4] Courts in the Ninth Circuit have recognized the split in authority regarding whether to apply 28 U.S.C. § 1404 or § 1412 in cases where there is only "related to" jurisdiction. *See, e.g., Owen v. Godwin*, No. CV-12-3037-RMP, 2012 WL 3945770, at *1 (E.D. Wash. Sept. 10, 2012) (acknowledging the split in authority but finding the issue moot because the "related-to" proceeding was consolidated with another case clearly falling under § 1412); *Doss v. Chrysler Group, LLC*, No. CV-09-02130, 2009 WL 4730932, at *5 (D. Az. Dec. 7, 2009) (recognizing split of authority and applying § 1404 where the case involved "related to" jurisdiction). Although some districts in California (as cited by the London Market Insurers) have applied § 1412 in such cases, the application of §1404 is more appropriate for the reasons discussed above.

[5] Because, in this case, the only connection to venue in the Western District of North Carolina is that the Bankruptcy Cases are pending there, it is not surprising that the London Market Insurers advocate that § 1412 should apply.

70133163.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

WL 3896826, at *2 (D. Or. July 18, 2016). In seeking to upset the plaintiff's choice of forum, the moving party must make a convincing showing of the right to transfer. *Decker Coal Co. v. Commonwealth Edison Co*., 805 F.2d 834, 843 (9th Cir. 1986). If the Court applies § 1404(a), the London Market Insurers cannot establish that the coverage action "might have been brought" in the North Carolina federal court. Further, under either § 1404(a) or § 1412, the London Market Insurers have failed to provide any evidence that establishes that either the "convenience of parties" or "interest of justice" supports transfer of venue to the Western District of North Carolina.

## C.    If the Court Applies § 1404(a), the Motion to Transfer Must Be Denied

To transfer venue of an action pursuant to § 1404, the London Market Insurers must establish that the action "might have been brought" in the Western District of North Carolina. 28 U.S.C. § 1404(a). This is a burden they cannot meet. Although a coverage action could now be brought in the Western District of North Carolina in light of the court's "related to" jurisdiction, the London Market Insurers have not established that the action "might have been brought" in that district on the pre-petition date that the action was filed. *See, e.g., Cali v. E. Coast Aviation Servs., Ltd*., 178 F. Supp. 2d 276, 282-83 (E.D.N.Y. 2001) ("A 'district ... where [an action] might have been brought' has been interpreted to mean a district where an action might have been brought as of right by the plaintiff as to both venue and jurisdiction at the time the action was filed by the plaintiff."). As this is a state law action, there is no federal question jurisdiction.

Moreover, diversity jurisdiction does not exist for multiple reasons, including the fact that one Defendant-Insurer, National Casualty Company, has its principal place of business in Arizona, where Kaiser Cement is incorporated. Further ,the London Market Insurers have failed to show (or even assert) that: (i) diversity exists with respect to the thousands of individual underwriters who subscribed to their policies; and (ii) the amount in controversy between the Debtors and each of those thousands of individual underwriters meets or exceeds the $75,000

70133163.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

jurisdictional requirement.[6]  In addition, another defendant insurer, Truck Insurance Exchange, is an unincorporated association that is treated for diversity purposes as a citizen of every state in which it has a subscriber.  *E.g.*, *Dally Properties, LLC v. Truck Insurance Exchange*, 2006 WL 2091151, at *1 (W.D. Wash. 2006) (remanding for lack of diversity and noting jurisdiction and noting that Truck is an unincorporated association enjoying citizenship in every state in which it has a subscriber).[7]  Thus, the London Market Insurers have not established a basis for diversity jurisdiction or that the coverage action "might have been brought" in the North Carolina district court.

## D.   Regardless of Which Statute Applies, Transfer Should Not Be Granted

Even if the Court assumes, *arguendo*, that § 1412 applies or otherwise concludes that the coverage action "might have been brought" in federal court in North Carolina (which Kaiser disputes), the Court should still deny the motion.  The factors that a court may consider under either test are largely overlapping because both § 1404(a) and § 1412 require an analysis of "the convenience of parties" and "the interest of justice."  In determining whether the movant has carried its burden, the court has broad discretion and must perform a "case-by-case" analysis.  *See, e.g., Smolker*, 264 B.R. at 668 ("Adjudication of a request for a transfer of venue under Section 1412 requires a case-by-case analysis that is subject to the broad discretion of the court."); *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) ("Under § 1404(a), the district court has discretion 'to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'") (internal quotations omitted); *Firefighters' Ret. Sys. v. Citgo Grp. Ltd.*, No. 13-373-SDD-EWD, 2016 WL 4059705, at *4

---

[6] Defendants Certain Underwriters at Lloyd's, London, are individuals who have subscribed to, and/or have reinsured-to-close, directly or indirectly, the syndicate-years-of account for those Lloyd's syndicates participating in the London policies identified in the Complaint.  These Underwriters, which number in the thousands, are natural persons residing in countries around the world, including in various states in the United States.

[7] *See also Country Rock Cafe, Inc. v. Truck Insurance Exchange*, 417 F.Supp.2d 399, 402-03 (S.D.N.Y. 2006); *Adolph Coors Co. v. Truck Insurance Exchange*, 2005 WL 486580 (D.D.C. Feb. 28, 2005); *Truck Insurance Exchange v. The Dow Chemical Co.*, 331 F. Supp. 323, 324-25 (W.D.Mo. 1971).

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

70133163.1

Case 16-03127-rld   Doc 28   Filed 11/03/16

(M.D. La. July 6, 2016) (recognizing that courts generally consider the same factors in analyzing transfers under either § 1404(a) or § 1412 in determining that transfer to the bankruptcy court jurisdiction was unwarranted under either standard), *report and recommendation adopted*, 2016 WL 4059666 (M.D. La. July 27, 2016).

For example, under § 1404(a), a court may consider, among other things:

- the state that is most familiar with the governing law,
- the plaintiff's choice of forum,
- the respective parties' contacts with the forum,
- the contacts relating to the plaintiff's cause of action in the chosen forum,
- the differences in the costs of litigation in the two forums,
- the availability of compulsory process to compel attendance of unwilling non-party witnesses,
- the ease of access to sources of proof, and
- the relevant public policy of the forum state.

*Jones*, 211 F.3d at 498-99.

Similarly, under § 1412, courts often consider the following factors with regard to convenience of the parties:

- the location of the plaintiff and the defendant,
- ease of access to necessary proof,
- the convenience of witnesses,
- the availability of subpoena power for the unwilling witnesses, and
- expenses related to obtaining witnesses.

*In re DRI Cos.*, 552 B.R. 195, 197 (Bankr. C.D. Cal. 2016). With regard to "interests of justice," courts consider the following factors under § 1412:

- economics of estate administration,
- presumption in favor of the "home court,"
- judicial efficiency,
- ability to receive a fair trial,
- the state's interest in having local controversies decided within its borders, by those familiar with its laws,

- enforceability of any judgment rendered, and
- plaintiff's original choice of forum.

**Page 10 of 19** Plaintiffs' Brief in Opposition to London Market Insurers' Motion to Transfer Venue

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

*In re Bruno's*, 227 B.R. 311, 324-25 (Bankr. N.D. Ala. 1998).

Here, all the factors relating to the "the interests of justice" and the "convenience of the parties" either point to Oregon or are neutral.

### 1.   Transfer Would Be Contrary to the Interests of Justice

### a.   Oregon Has a Strong Interest in Deciding the Coverage Action and Is the Best Forum to Apply Applicable Oregon Law

A crucial factor in determining the interests of justice is the state's interest in having local controversies decided within its borders, by those familiar with its laws. *Jones*, 211 F.3d at 498-99; In re Bruno's, Inc., 227 B.R. at 324-25. Oregon has a strong interest in ensuring that contaminated property within its borders is remediated and that sufficient insurance assets are available to pay those costs, as evidenced by its passage of the OECAA. Oregon passed the OECAA in 1999 to streamline insurance disputes involving contamination within its borders and amended it in 2013 to expand its reach. The legislative purpose of the act is stated as follows:

> "465.478 Legislative findings. The Legislative Assembly finds that there are many insurance coverage disputes involving insureds who face potential liability for their ownership of or roles at polluted sites in this state. The State of Oregon has a substantial public interest in promoting the fair and efficient resolution of environmental claims while encouraging voluntary compliance and regulatory cooperation."

To that end, the OECAA, among other things, provides that:

- Oregon law applies to insurance coverage disputes involving environmental sites in Oregon, regardless of whether the policyholder is an Oregon resident;

- a liability insurer's duty to defend extends to environmental cleanups under written voluntary agreements with environmental agencies;

- under "all sums" policies (like those at issue in this action), insurers are liable for all defense and indemnity costs, up to a policy's limit of liability, regardless of the existence of other applicable insurance;

- insurers must cooperate with policyholders to reconstruct missing policies;

70133163.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

- "non-cumulation" provisions may not be construed to reduce the limits of coverage simply on grounds that previously issued policies also potentially cover the same environmental loss; and

the "owned property" exclusion in liability policies is limited.

ORS 465.475, *et seq.*

Not only does the OECAA evidence Oregon's strong public policy interest in resolving environmental coverage disputes over property within its borders,[8] it also provides a high degree of certainty regarding Oregon insurance law. In considering the "interest of justice," a court may consider the degree of uncertainty in the law of the relevant jurisdictions. *See Van Dusen v. Barrack*, 376 U.S. 612 (1964). Although Oregon law should apply to the Debtors' claim for coverage of their liabilities arising from the St. Helens Site regardless of the venue, there is little doubt that the choice of law analysis (and perhaps other legal issues) would necessarily become more complicated and contested if the action is transferred, which would unnecessarily consume the assets of the estate.

Oregon courts (whether state or federal) are more familiar with the OECAA and Oregon law generally and are best situated to apply governing Oregon law. Moreover, if the action were transferred to the Western District of North Carolina and the jury trial were to go forward there, it would impose "jury duty on the people of a community unrelated to the litigation[.]" *Home Indem. Co. v. Stimson Lumber Co.*, 229 F. Supp. 2d 1075, 1081 (D. Or. 2001).

### b. Judicial Efficiency and the Economics of Estate Administration Weigh in Favor of Venue in Oregon

The London Market Insurers argue that "the transfer would promote the economic and efficient administration of the estate" but they do not explain how other than with a vague

---

[8] Even in the absence of the OECAA, a state's interest in insurance coverage actions allocating liability for contamination within its borders outweighs (or as one court put it, "dominates") the interest of the state where the insured is based. *Sandvik, Inc. v. Cont'l Ins. Co.*, 724 F. Supp. 303 (D.N.J. 1989) (granting motion to transfer case from state where insured was based to state where the site of contamination was located).

70133163.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

(and untrue)[9] assertion that "all claims related to Kaiser's bankruptcy could be resolved in the same District." Df. Br. at p. 5. They have provided no "evidence of adverse or detrimental effect on the estate of liquidating the cause of action" in Oregon or "evidence of increased potential cost to Debtor's estate for Debtor's employees/officers to litigate in" Oregon. *In re Bruno's*, 227 B.R. at 329 (denying motion to transfer to home bankruptcy court).

Rather than provide efficiencies, the transfer of this action would result in additional inefficiencies to the bankruptcy estate. For example, if this action were transferred to the Bankruptcy Court, that court would have to issue proposed findings of facts and conclusions of law for all pre-trial activities that would then have to be reviewed by the District Court. Further, as neither party has consented to a jury trial in the Bankruptcy Court, any jury trial would have to take place in the North Carolina District Court, such that pre-trial and trial activities would be bifurcated. Oregon state court is the only venue where pre-trial activities and trial could be resolved in the same court. Moreover, requiring the North Carolina Bankruptcy Court to hear discovery and pre-trial motions associated with a large and complex insurance coverage action involving non-North Carolina law and relating to environmental liabilities at a site located thousands of miles away that potentially triggers over 40 years of liability policies would be an unnecessary burden on that court, which no doubt already has more than enough to do in connection with the Debtors' Bankruptcy Cases and the core proceedings pending before it.

This case is not unlike *Smolker*, where "with the exception of the home court presumption, *all* of the relevant factors are either neutral or weigh in favor of preservation of [the plaintiff's] original choice of forum." *Smolker*, 264 B.R. at 668. Like the *Smolker* case, "[i]n light of the size and complexity" of the bankruptcy cases, the transfer of the action "is unlikely to have any material impact on the administration of the [...] bankruptcy cases" and "[t]o the extent

---

[9] As the London Market Insurers know, the assertion that transfer of this action to North Carolina would result in "all claims related to Kaiser's bankruptcy" being "resolved in the same District" is simply incorrect. Indeed, the London Market Insurers themselves are party to an asbestos insurance coverage case involving Kaiser that is currently on appeal in a district other than the Western District of North Carolina. *See* McChesney Dec., ¶ 23.

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204
70133163.1

that a transfer would have any impact whatsoever on the administration of these bankruptcy cases, it could only be to further strain the limited resources of the [...] Court handling these bankruptcy cases." *Id.*

Additionally, as will be more fully set forth in the Debtors' Motion to Remand, remand of the action back to state court is appropriate under either Ninth Circuit or Fourth Circuit case law. As a result, granting the motion to transfer to allow the Bankruptcy Court to determine the remand motion "would merely delay what must occur in this action, and would therefore result in a waste of judicial resources." *Ni Fuel Co. v. Jackson*, 257 B.R. 600, 612 (N.D. Okla. 2000). Indeed, if the case were transferred to the North Carolina Bankruptcy Court, that court would likely exercise mandatory abstention and remand the action back to Oregon state court. *See In re Pluma, Inc.*, No. AP 99-11104C-11G, 2000 WL 33673752, at * 2 (Bankr. M.D.N.C. Sept. 15, 2000) (remanding a transferred case back to the state court in the jurisdiction it was transferred from.[10]

### c. Debtors' Choice of Venue Is Entitled to Deference, Particularly Since the St. Helens Site Is in Oregon

As a general matter, plaintiffs are given great deference in their choice of forum. *See, e.g.*, *Stimson*, 229 F. Supp. 2d at 1085; *In re Bruno's*, 227 B.R. at 328-29. That should be particularly true here, where: (i) one of the two environmental sites at issue is in Oregon; and (ii) as discussed above, Oregon has a strong stated interest in the remediation of such sites. Kaiser's selected forum is proper, and the Court should give it deference.

Although courts have recognized that a plaintiff's choice of forum may carry less weight when it is not the plaintiff's home, other factors and connections to the forum can bolster weight accorded to the plaintiff's choice of forum. *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 101 (2d Cir. 2000) ("While any plaintiff's selection of a forum is entitled to deference,

---

[10] The Debtors reserve the right to move for abstention if the action is transferred to the North Carolina Bankruptcy Court.

**Page 14 of 19** Plaintiffs' Brief in Opposition to London Market Insurers' Motion to Transfer Venue

70133163.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Case 16-03127-rld Doc 28 Filed 11/03/16

that deference increases as the plaintiff's ties to the forum increase.").  As Oregon has a significant interest in having its law applied to insurance disputes surrounding coverage for environmental claims within its borders, the simple fact that neither Kaiser Cement nor Kaiser Gypsum has its headquarters in Oregon (neither has its headquarters in North Carolina either) should not dissuade the Court from giving significant deference to the Debtors' choice of forum here.  *See Stimson*, 229 F. Supp. 2d at 1085-86 (recognizing in denying motion to transfer venue that the plaintiffs choice of forum in Oregon was entitled to consideration even though the plaintiffs were not headquartered in Oregon as there were both logical and convenient reasons for the plaintiffs' choice of forum); *In re Cytodyn of N.M., Inc.*, 374 B.R. 733, 742-44 (Bankr. C.D. Cal. 2007) (recognizing that the "plaintiff's original choice of forum is of particular note" as "it was *the* logical location for the trial," because the interested parties lived there and the relevant events occurred there, even though it was not the plaintiff's home) (emphasis in original).

> **d.  The "Home Court" Presumption Should Be Given Little, If Any, Weight**

The London Market Insurers' reliance on an alleged presumption in favor of the Bankruptcy Case is misconstrued, as the "home court" presumption should not be applied at all under § 1404(a).  At a minimum, the presumption should be given less weight as a factor because this action is non-core.  *See, e.g.*, *Longhorn Partners Pipeline L.P. v. KM Liquids Terminals, L.L.C.*, 408 B.R. 90, 102 (Bankr. S.D. Tex. 2009) ("[T]he factors that give rise to the [home court] presumption for core matters are not implicated by non-core matters that are merely 'related to' the bankruptcy case."); *In re Cont'l Air Lines, Inc.*, 61 B.R. 758, 770 & n.25 (S.D. Tex. 1986) (recognizing that the home court presumption arises out of the idea that "administrative matters," or core matters, are properly handled in a single "centralized forum," whereas the same is not true for matters that are "truly civil litigation in the historic sense"); *cf. Smolker*, 264 B.R. at 668 ("[T]he location of the debtor's bankruptcy case is not the only factor

70133163.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

that courts have evaluated in considering whether to transfer venue of an adversary proceeding under Section 1412.").

Moreover, the home court presumption is diluted when a non-debtor seeks to invoke it.  *In re Harnischfeger Indus., Inc.*, 246 B.R. 421, 440 (Bankr. N.D. Ala. 2000) ("the home court presumption was created to facilitate an economic and efficient administration of the debtor's estate.  Stated differently, this presumption exists to help the debtor, not to facilitate forum-shopping for co-defendants."); *cf. Hopkins v. Plant Insulation Co.*, 342 B.R. 703, 715 (D. Del. 2006) (noting that the presumption "is typically used to benefit the debtor.") (citation omitted).  Indeed, the presumption makes more sense when the original action was brought in the district where the bankruptcy is pending, not where the plaintiff brought the action in another jurisdiction and then subsequently filed for bankruptcy relief in another state.  *Owen v. Godwin*, No. CV-12-3037-RMP, 2012 WL 3945770, at *1 (E.D. Wash. Sept. 10, 2012) (describing the home court presumption as "a presumption that an action should *remain* in the same district as where the bankruptcy is pending") (emphasis added).

### 2.     Transfer Would Be Contrary to the Convenience of the Parties

The London Market Insurers "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."  *Decker Coal*, 805 F.2d at 843 (denying motion to transfer under § 1404 where the transfer would merely shift rather than eliminate the inconvenience).  Indeed, not only must the London Market Insurers establish that the Debtors' choice of forum is inconvenient, they must show that North Carolina venue is in fact "more convenient."  *See In re DRI Cos.*, 552 B.R. at 197 (applying § 1412).  The London Market Insurers cannot meet this burden as Oregon is by far the more convenient venue for the parties.

In their Motion to Transfer, the London Market Insurers ignore the critical facts that one of the two Sites at issue in the coverage action is in Oregon and that the other Site is also in the Northwest, in Washington state.  Complaint, ¶ 2.  As a result, a considerable amount of the

70133163.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

evidence relevant to this action is located in Oregon and Washington. McChesney Dec. ¶¶ 13-18. In weighing convenience factors, courts have recognized that "access to the contaminated site in environmental insurance coverage cases is of particular importance." *Fimbel Door Corp. v. U.S. Fid. & Guar. Co.,* No. CIV. 90-1187 (CSF), 1990 WL 191920 (D.N.J. Nov. 5, 1990) (granting a motion to transfer an environmental insurance coverage action from the state of the insured's incorporation and principal place of business to the state hosting the environmental site); *see also Sandvik*, 724 F. Supp. at 308 ("Environmental coverage claims cannot be decided in a vacuum; they require investigation into site-specific facts and cannot be decided merely by reference to the terms of the insurance policy."). Thus, ease of access to proof weighs heavily in favor of Oregon venue.

Not only are the Sites physically located in Oregon and Washington, the vast majority of fact witnesses (and likely some of the experts) who can be expected to testify regarding the Sites are also in Oregon or Washington. McChesney Dec., ¶ 13. Specifically with respect to the St. Helens Site, the only known fact witness with knowledge of the Site's historical operations is a long-term resident of Oregon. McChesney Dec., ¶ 14. Most of the environmental consultants involved in the investigation and remediation of the St. Helens Site are located in Oregon.[11] McChesney Dec., ¶ 15. The fact that the North Carolina Bankruptcy Court can issue nationwide subpoenas does nothing to ameliorate the inconvenience to these witnesses who will be forced to travel across the country to testify at trial if the action is transferred. Moreover, the Debtors believe that transferring venue of the Coverage Action to North Carolina would increase the costs to the estate of ensuring the availability of witnesses. McChesney Dec., ¶ 26. Although the Defendant-Insurers' witnesses are not likely to be in Oregon, they are also not likely to be in North Carolina since none of the Defendant-Insurers have their principal place of business there. Complaint, Exhibit 2.

---

[11]  In fact, the Debtors are aware of only one consultant who resides in North Carolina. McChesney Dec., ¶ 16.

**Page 17 of 19** Plaintiffs' Brief in Opposition to London Market Insurers' Motion to Transfer Venue

70133163.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Further, most of the documents relating to environmental investigation, conditions and cleanup at the St. Helens Site are located in Portland, Oregon, where the coverage action was originally filed, and the document repository for the LDW Site is situated just across the Columbia River, in Vancouver, Washington. McChesney Dec., ¶¶ 17-18. And, while historical Kaiser documents relating to St. Helens Site operations and the various LDW Site locations where Kaiser operated are located in several different locations (including Portland, Oregon and Seattle, Washington), none of those documents are located in North Carolina. McChesney Dec., ¶ 19. Again, the fact that the Defendant-Insurers' records are not likely to be in Oregon does not weigh in favor of transfer because they are also not likely to be in North Carolina, and the London Market Insurers have not contended to the contrary.

Similarly, the location of the parties to the coverage action does not weigh in favor of transfer. Although the Bankruptcy Cases are pending in the Western District of North Carolina as Kaiser Gypsum is incorporated there (whereas Kaiser Cement is incorporated in Arizona), neither the Debtors nor the London Market Insurers (nor any of the other Defendant Insurers) have their principal operations or headquarters in the Western District of North Carolina. The state of incorporation of the parties, when considered independently of their principal places of business and their availability as witnesses, does not determine the most convenient forum. Yale M. Lyman, *Factors of Choice for Venue Transfer under 28 U.S.C. 1404(a)*, 41 CALIF. L. REV. 507, 509-10 (1953). Indeed, the London Market Insurers have failed to establish that North Carolina is in any way more convenient to the parties than Oregon with regard to this action.

Hence, the ease of access to necessary proof, convenience of witnesses, and expenses related to obtaining witness all strongly weigh in favor of Oregon venue. The only "convenience" factor the London Market Insurers have even identified is that Kaiser Gypsum recently incorporated in North Carolina, but the location of the Debtors and the Insurer Defendants is largely neutral given that no party has its headquarters in either Oregon or North

**Page 18 of 19** Plaintiffs' Brief in Opposition to London Market Insurers' Motion to Transfer Venue

70133163.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Carolina.  In short, the London Market Insurers have failed to carry their burden of proving that North Carolina is a more convenient forum than Oregon.

## IV.  <u>CONCLUSION</u>

For all of the reasons set forth above, the Debtors respectfully request that the Court deny the London Market Insurers' Motion to Transfer.

DATED this 3rd day of November, 2016.

MILLER NASH GRAHAM & DUNN LLP

/s/ C. Marie Eckert
C. Marie Eckert, P.C., OSB No. 883490
marie.eckert@millernash.com
Phone: 503.224.5858
Fax: 503.224.0155

Kay M. Brady (pro hac vice pending)
kay.brady@klgates.com
Michael J. Lynch (pro hac vice pending)
michael.lynch@klgates.com
D. Syed Ali (pro hac vice pending)
Syed.ali@klgates.com
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Telephone:  (412) 355-6500
Facsimile:  (412) 355-6501

Attorneys for Plaintiffs Kaiser Gypsum Company, Inc. and Hanson Permanente Cement, Inc. (f/k/a Kaiser Cement Corporation)

70133163.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

I certify that I served the foregoing Plaintiffs' Brief in Opposition to London

Market Insurers' Motion to Transfer Venue on:

Thomas W. Brown
Cosgrave Vergeer Kester LLP
888 SW 5th Avenue, Suite 500
Portland, OR 97204
Phone: 503 323-9000
Fax: 503 232-9019
E-mail: tbrown@cosgravelaw.com;
       tbrown@cvk-law.com

Adam E. Jones
Fosberg & Umlauf, P.S.
901 Fifth Avenue, Suite 1400
Seattle, WA 98164-2047
Phone: 206-689-8501
E-mail: ajones@foum.law

Attorney for Defendants AIU Insurance
Company. Granite State Insurance Company,
The Insurance Company of the State of
Pennsylvania, Lexington Insurance Company,
and National Union Fire Insurance Company
of Pittsburgh, PA

Adam E. Jones
Fosberg & Umlauf, P.S.
901 Fifth Avenue, Suite 1400
Seattle, WA 98164-2047
Phone: 206-689-8500
E-mail: ajones@foum.law

Attorney for Defendants Allianz Underwriters
Insurance Company, Allstate Insurance
Company, Associated International Insurance
Company, Columbia Casualty Company; The
Continental Insurance Company, Executive
Risk Indemnity, Inc., Fireman's Fund
Insurance Company, Munich Reinsurance
America, Inc., National Fire Insurance
Company of Hartford, Old Republic Insurance
Company, TIG Insurance Company, United
States Fire Insurance Company, Certain
Underwriters at Lloyd's of London, Certain
London Market Insurance Companies,
Accident & Casualty Insurance Company,
Alba General Insurance Company Ltd., Anglo
French Insurance Company Limited, The
Anglo Saxon Insurance Association, Assurance
Compagniet Baltica-Skandinavia Aktieselskab,
Baloise Fire Insurance Company Limited,
Brittany Insurance Company, CX Reinsurance
Company Limited, The Dominion Insurance
Company Limited, Excess Insurance Company
Limited, Fidelidade Insurance Company,
Harper Insurance Company Limited, The
London and Edinburgh Insurance Company
Limited, Markel International Insurance
Company, National Casualty Company of
America Ltd., River Thames Insurance
Company Limited, The Royal Scottish
Insurance Company Ltd., St. Katherine
Insurance Company Limited, Stronghold
Insurance Company Limited, Tenecom
Limited, Trent Insurance Company Limited,
UnionAmerica Insurance Company Limited,
Winterthur Swiss Insurance Company, World
Auxilliary Insurance Corporation Limited,
Zurich International Limited, John Does 1-100,
and Westport Insurance Corporation

**Page 1 of 3**   Certificate of Service

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Damon L. Henrie
Katie L. Smith
Henrie & Smith, LLP
15455 SW Greenbrier Pkwy, Suite 125
Beaverton, OR  97006
Phone:  503-593-8548
E-mail:  dhenrie@henriesmith.com

Katherine M. Hance
James P. Ruggeri
Shipman & Goodwin LLP
1875 K. Street NW, Suite 600
Washington, D.C.  20006

Adam E. Jones
Fosberg & Umlauf, P.S.
901 Fifth Avenue, Suite 1400
Seattle, WA  98164-2047
Phone:  206-689-8500
E-mail:  ajones@foum.law

Attorneys for First State Insurance Company,
London & Edinburg Insurance Company, Ltd.
New England Reinsurance Corporation, and
Twin City Fire Insurance Company

Adam E. Jones
Fosberg & Umlauf, P.S.
901 Fifth Avenue, Suite 1400
Seattle, WA  98164-2047
Phone:  206-689-8500
E-mail:  ajones@foum.law

Jay William Beattie
Jay W Beattie
Lindsay Hart LLP
1300 SW 5th Avenue,  Suite 3400
Portland, OR  97201
Phone:  503 226-7677
Fax:  503 226-7697
E-mail:  jbeattie@lindsayhart.com

Attorneys for Truck Insurance Exchange

Adam E. Jones
Fosberg & Umlauf, P.S.
901 Fifth Avenue, Suite 1400
Seattle, WA  98164-2047
Phone:  206-689-8500
E-mail:  ajones@foum.law

Peter Jeffrey Mintzer
Selman Breitman LLP
800 Fifth Avenue, Suite 4100
Seattle, WA  98104-3100
Phone:  206-447-6461
Fax:  206-447-6461
E-mail:  pmintzer@selmanlaw.com

Attorneys for Defendants National Casualty
Company, and Sentry Insurance a Mutual
Company

Douglas R. Pahl
Perkins Coie LLP
1120 NW Couch Street, 10th Floor
Portland, OR  97209
Phone:  503 727-2087
Fax:  503 727-2222
E-mail:  dpahl@perkinscoie.com

Attorneys for Owens Corning

**Page 2 of 3**    Certificate of Service

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Brandy A. Sargent
Stoel Rives LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Phone: 503 294-9888
Fax: 503 220-2480
E-mail: brandy.sargent@stoel.com

Attorneys for Armstrong World Industries, Inc.

Adam E. Jones
Fosberg & Umlauf, P.S.
901 Fifth Avenue, Suite 1400
Seattle, WA 98164-2047
Phone: 206-689-8500
E-mail: ajones@foum.law

Joseph M. Vanleuven
Davis Wright Tremaine LLP
1300 SW 5th Avenue, Suite 2400
Portland, OR 97201
Phone: 503 778-5325
Fax: 503 778-5299
E-mail: joevanleuven@dwt.com

Attorneys for Transport Indemnity Company

by the following indicated method or methods on the date set forth below:

☒ **CM/ECF system transmission.**

☐ **E-mail.** As required by Local Rule 5.2, any interrogatories, requests for production, or requests for admission were e-mailed in Word or WordPerfect format, not in PDF, unless otherwise agreed to by the parties.

☐ **Facsimile communication device.**

☐ **First-class mail, postage prepaid.**

☐ **Overnight courier, delivery prepaid.**

DATED this 3rd day of November, 2016.

/s/ C. Marie Eckert
C. Marie Eckert, P.C., OSB No. 883490
marie.eckert@millernash.com
Phone: 503.224.5858
Fax: 503.224.0155

Attorneys for Plaintiffs Kaiser Gypsum
Company, Inc. and Hanson Permanente
Cement, Inc. (f/k/a Kaiser Cement
Corporation)

**Page 3 of 3** Certificate of Service

70133163.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Case 16-03127-rld   Doc 28   Filed 11/03/16