C. Marie Eckert, P.C., OSB No. 883490
marie.eckert@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: 503.224.5858
Fax: 503.224.0155

Kay M. Brady (*pro hac vice*)
kay.brady@klgates.com
Michael J. Lynch (*pro hac vice*)
michael.lynch@klgates.com
D. Syed Ali (*pro hac vice*)
syed.ali@klgates.com
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Telephone: (412) 355-6500

Attorneys for Plaintiffs Kaiser Gypsum Company,
Inc. and Hanson Permanente Cement, Inc.

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>OUT OF DISTRICT & BANKRUPTCY CASE<br><br>KAISER GYPSUM COMPANY, INC., and HANSON PERMANENTE CEMENT, INC. (f/k/a Kaiser Cement Corporation),<br><br>      Debtors. | Adv. Proc. No. 16-03127-rld<br><br>Chapter 11<br><br>PLAINTIFFS' SUR-REPLY IN OPPOSITION TO LONDON MARKET INSURERS' MOTION TO TRANSFER VENUE<br><br>Date of Hearing: December 12, 2016<br>Time of Hearing: 10:30 a.m. |
| KAISER GYPSUM COMPANY, INC., and HANSON PERMANENTE CEMENT, | |

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

INC. (f/k/a Kaiser Cement Corporation),

Plaintiffs,

v.

AIU INSURANCE COMPANY et al.,

Defendants.

## INTRODUCTION

Apparently recognizing their failure to even remotely carry their burden of proof with respect to the Motion to Transfer, the London Market Insurers (or the "Insurers") filed an extensive reply in support of the motion that includes new arguments and purported facts that allegedly support the request for a venue transfer. Notwithstanding these new arguments and "facts" (many of which are inaccurate), including: (a) arguments from counsel in the form of a declaration, (b) mischaracterizations regarding the pending California coverage litigation, and (c) excerpts from briefs and discovery in litigation regarding coverage for the Debtors' asbestos bodily injury liability, it remains clear that the London Market Insurers have not met and cannot meet their burden of establishing that the Motion to Transfer should be granted under either 28 U.S.C. § 1404(a) or § 1412. This failure is evident from the following chart, which summarizes the relevant factors under either a 28 U.S.C. § 1404(a) or a § 1412 analysis.

| FACTORS | VENUE FAVORED |
|---|---|
| **Interest of Justice Factors** | |
| • Economics of estate administration | **Favors Oregon** - Administration of estate and resolution of coverage action independent of each other. Transfer would impose undue burden on Bankruptcy Court |
| • State that is most familiar with governing law | **Favors Oregon** - Oregon is most familiar with insurance law and Debtors' obligations under state environmental law; North Carolina law is not applicable |
| • State's interest in having local controversies decided within its borders, by those | **Favors Oregon** - Oregon Environmental Cleanup Assistance Act ("OECAA") evidences strong state interest in "promoting the fair and efficient resolution of |

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

4845-3547-7309.1

| | |
|---|---|
| familiar with its laws | environmental claims while encouraging voluntary compliance and regulatory cooperation." ORS 465.478. |
| • Judicial efficiency | **Favors Oregon** - Oregon allows for pre-trial activities and trial in the same court; choice of law resolved; Oregon is more familiar with state law issues |
| • Plaintiff's original choice of forum | **Favors Oregon** - Debtors commenced this action in Oregon because one of the two environmental sites at issue is in Oregon and to promote efficient and convenient resolution and maximize estate assets |
| • "Home court" presumption | **Neutral** - Presumption is inapplicable since this proceeding is non-core and Debtors oppose transfer |
| • Enforceability of judgment | **Neutral** |
| • Ability to get a fair trial | **Neutral** |
| **Convenience of Parties Factors:** | |
| • Convenience of witnesses | **Favors Oregon** - Most witnesses are in Oregon or Washington, not North Carolina |
| • Ease of access to proof | **Favors Oregon** - St. Helens site, witnesses, and documents are in Oregon |
| • Expenses related to obtaining witnesses | **Favors Oregon** - Most witnesses in Oregon or Washington |
| • Location of the parties | **Favors Oregon** – Although none of the parties has its principal place of business in Oregon or North Carolina, the Oregon Department of Environmental Quality ("DEQ"), which is seeking to intervene, is in Oregon |
| • Subpoena power | **Neutral** - Both courts have subpoena power |

As demonstrated by this chart, Oregon state court is the most appropriate venue for this action. This is a non-core proceeding involving only state law issues, and Oregon has a strong interest in hearing this complex insurance coverage action involving contaminated property located, in part, in Oregon. The Debtors, the Official Committee of Unsecured Creditors (the "Committee"), and DEQ recognize that Oregon is the most efficient and appropriate forum for this state law action, and all oppose the Motion to Transfer. Tellingly, only one of the dozens of Defendant Insurers has joined in the Motion to Transfer. The only parties supportive of the Motion are the moving Insurers.

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

4845-3547-7309.1

# ARGUMENT

## I.  The Movants Have Not Met Their Burden of Establishing that the Interests of Justice Support Transfer

### A.  Oregon Law Applies to this Dispute

#### 1.  In Assessing Which Law Governs, the Court Should Apply Oregon Choice-of-Law Principles

The London Market Insurers argue incorrectly that California law should apply to this dispute and fail to cite controlling authority for that proposition.  Their argument ignores Oregon's choice-of-law rules and the important state interest underlying Oregon's statutory mandate that Oregon law governs insurance coverage disputes over contaminated property in Oregon.[1]  Under Oregon choice-of-law principles, there is no question that Oregon law applies to the Debtors' claim for coverage of environmental contamination at the St. Helens Site.  The Site is located in Oregon, and by statute, Oregon law governs claims for coverage of environmental property damage sited in Oregon.  ORS 465.480(2)(a).  Hence, Oregon law applies to the coverage dispute over the St. Helens site.

Oregon choice-of-law principles also point to Oregon law for coverage of the LDW Site, even though it is located in Washington.  Under Oregon choice-of-law rules, the Court must determine as a threshold issue whether there is a material difference between Oregon law and the law of another jurisdiction.  *Waller v. Auto–Owners Ins. Co.*, 174 Or. App. 471, 475,

---

[1]  A federal court generally applies the choice-of-law rules of the state in which it sits, and even if the case is transferred, the transferee court should apply "the choice-of-law rules of the State from which the case originated." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243, n. 8 (1981); *see also Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) ("We conclude, therefore, that in cases such as the present, where the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue."); *Nippon Fire & Marine Ins. Co. v. Great Am. Ins. Co.*, 103 F.3d 139, slip op. at 1 (9th Cir. 1996) ("[I]n cases where the defendant has sought transfer pursuant to 28 U.S.C. § 1404(a), the transferee court must apply the same choice of law rules as the transferor court would have."); *Hill v. Gen. Motors Corp.*, 168 F.3d 482, slip op. at 1 (4th Cir. 1998) ("The transferee district court must . . . apply the laws of the state of the transferor district court . . . ."). Bankruptcy courts sitting within the Fourth Circuit also apply this rule.  *See Titus v. Smith*, No. 12-05041, 2012 WL 8007169, slip op. at *6 (Bankr. W.D. Va. Dec. 3, 2012) ("When a case is transferred from one district court to another district court in a different state, the transferee court is required to apply the substantive law that would have been applied by the transferor court.").  Thus, in assessing which state's law governs, the Court should apply Oregon's choice-of-law principles.

---

**Page 4 of 17**  Plaintiffs' Sur-Reply in Opposition to London Market Insurers' Motion to Transfer Venue

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

26 P.3d 845 (2001); s*ee also Machado–Miller v. Mersereau & Shannon, LLP*, 180 Or.App. 586, 591, 43 P.3d 1207 (2002) ("In analyzing a choice-of-law problem, the threshold question is whether the different states' laws actually conflict with each other.") (*citing Lilienthal v. Kaufman,* 239 Or. 1, 395 P.2d 543 (1964)). Where no material difference exists between Oregon law and the law of the proposed alternative jurisdiction, Oregon courts apply Oregon law without regard to the relative significance of the relationship between the dispute and the proposed alternative forum. *Waller*, 174 Or.App. at 475 (*citing Angelini v. Delaney*, 156 Or. App. 293, 300, 966 P.2d 223 (1998)). Further, the party advocating the application of a different jurisdiction's law has the burden to identify material differences between that jurisdiction's law and Oregon's. If the advocating party identifies no such material distinctions, Oregon courts will apply Oregon law without regard to whether such distinctions in fact exist. *Powell v. System Transport, Inc.,* 83 F. Supp.3d 1016, 1022 (D. Or. 2015); *see also Spirit Partners, LP v. Stoel Rives LLP*, 212 Or.App. 295, 303–304, 157 P.3d 1194 (2007) (court is not obligated to conduct a conflict-of-law analysis in the absence of express identification of material differences between Oregon law and the law of the proposed alternative forum).

The London Market Insurers have not established any conflict between Oregon law and the law of any other jurisdiction. Thus, under clear Oregon choice-of-law principles, Oregon law must be applied to this insurance coverage dispute.

In addition, even if the law of some other jurisdiction were deemed to apply to the policies, Oregon state law would still apply to other issues in this dispute. For example, legal questions regarding whether Kaiser Gypsum owned or controlled all or part of the contaminated environmental media at the St. Helens Site and the extent to which Kaiser Gypsum was required to investigate and remediate the St. Helens Site will be addressed under Oregon law regardless of whether some other state's law applies to the interpretation of the policies. Numerous courts across the country apply the law of the forum where the site is located to environmental insurance coverages. *See, e.g., Ford Motor Co. v. Ins. Co. of North Am.*, 41 Cal. Rptr. 2d 342,

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

348 (Cal. Ct. App. 1995) (applying California law to dispute where environmental sites were located in California and the insured was a Michigan company); *Reichhold Chems., Inc. v. Hartford Accident and Indem. Co.*, 703 A.2d 1132, 1142 (Conn. 1997) (applying Washington law to dispute for coverage of Washington site even though the insured was a New York company, insured's broker was in New York, and policies were negotiated and executed in New York); *Gilbert Spruance Co. v. Pa. Mfrs. Ass'n Ins. Co.*, 629 A.2d 885, 886 (N.J. 1993) (applying New Jersey law to coverage dispute involving contaminated site in New Jersey even though the parties were domiciled in Pennsylvania).

### 2. The California Case Is Irrelevant to Choice-of-Law In this Case

Instead of addressing Oregon's choice-of-law principles, the London Market Insurers contend that the Debtors should be estopped from arguing in favor of Oregon law based on a purported agreement to apply California law to all coverage disputes involving these polices. This argument is a fallacy because the purported agreement does not exist. The London Market Insurers misleadingly direct the court to a separate coverage action litigated in California that involved many different insurance policies and a different set of liabilities, namely, product liability claims alleging bodily injury from exposure to asbestos. In sum, the Court should reject London Market Insurers' argument for multiple reasons.

First, the London Market Insurers cannot cite to any agreement by the Debtors that California law applies to an interpretation of the policies for asbestos liabilities, let alone an agreement concerning interpretation of the policies for all risks. There is no such agreement. Nor can they cite to any ruling in the California asbestos coverage action on choice of law, or even a ruling positing or analyzing a conflict of law between the law of California (which was the forum state) and any other potentially applicable law. There was no such ruling. Rather, the London Market Insurers rely solely on the fact that California law was cited by the parties during the California action. Because the instant action was not filed in California and is not therefore

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

subject to California choice-of-law principles, the application of California law in the California asbestos coverage litigation is irrelevant.

Second, the California coverage action did not involve all of the same insurance policies, or most of the coverage limits and policy provisions that are at issue here. For instance, none of the primary policies providing property damage coverage for the period 1940-1964 that are alleged here were even at issue in the California asbestos coverage case. Declaration of Philip E. Cook ("Cook Decl."), ¶ 5. Similarly, none of the excess policies providing property damage coverage before 1958 that are alleged in this action were even at issue in the California case. Cook Decl., ¶ 6. Rather, these policies provide coverage for environmental property damage claims and do not cover asbestos-related product liability claims. In addition to these "property damage only" policies, most of the other policies at issue in this action provide separate limits for property damage, on the one hand, and bodily injury or products hazard losses on the other hand. Cook Decl., ¶ 7. Because the policies at issue here afford coverage separately for each "occurrence" or "accident," the occurrences or accidents that give rise to the Debtors' environmental liabilities in Oregon and Washington are distinct from those that give rise to asbestos-related bodily injury or product hazard claims. Cook Decl., ¶ 8. And the provisions of the policies that apply to environmental property damage loss are, for the most part, different from those policy provisions that were litigated in the California asbestos bodily injury coverage case. Cook Decl., ¶ 9.

Third, in determining choice-of-law for insurance coverage disputes, courts routinely consider the insured risks. For example, under Oregon choice-of-law principles, Oregon law applies to determine insurance coverage for the St. Helens site because the risk insured—liability for environmental contamination—is in Oregon. ORS 465.480(2)(a). Beyond that simple determination, Oregon recognizes that "the rights and duties of the parties **with regard to an issue** in a contract are governed by the law, in light of the multistate elements of

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

the contract, that is the most appropriate for a resolution **of that issue**." ORS 15.360 (2013) (emphasis added).

In contrast to the environmental risks at issue in this case, the California coverage case dealt with thousands of asbestos bodily injury claims arising from products produced at ten different facilities in multiple locations. *See Kaiser Cement & Gypsum Corp. v. Ins. Co. of the State of Pa.*, 155 Cal. Rptr. 3d 283, 284 (Cal. Ct. App. 2013); *London Market Insurers v. Superior Court*, 53 Cal. Rptr. 3d 154, 156-57 (Cal. Ct. App. 2007) ("Kaiser has been named as a defendant in products liability suits brought by thousands of claimants who allege they were injured by their exposure to Kaiser's asbestos products."). The risks involved in the California coverage litigation thus touched on the interests of multiple jurisdictions, in contrast to the risks at issue here, which involve just two jurisdictions. Therefore, the London Market Insurers' contention that "courts have consistently applied California law to the interpretation of the same Kaiser insurance policies at issue in this action" (London Market Insurers Reply at p. 8) is both factually incorrect (since many of the policies at issue here were not at issue in the California cases) and legally irrelevant (since the California cases involved different risks, no conflict of law was identified, and California's choice-of-law principles applied there).

In addition, at least one other insurer that is a party to this case and also a party to the California coverage case has taken the position that California law does not apply to the Sites involved here. Specifically, Truck Insurance Exchange has cited Washington law with respect to coverage for the LDW Site. Declaration of Steven F. Hill, ¶ 3 and Ex. 1. Truck plainly did not deem itself or the Debtors to be judicially estopped from applying the law of a state other than California to environmental liability at the Sites, or to have made a judicial admission that California law applied to the Debtors' insurance policies, regardless of the insured risk.

Finally, judicial estoppel does not apply; it is a "common law equitable principle that has no single, uniform formulation." *See Hampton Tree Farms, Inc. v. Jewett*, 892 P.2d 683, 689 (Or. 1995). Generally, the "inquiry involves three issues: benefit in the earlier proceedings,

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

different judicial proceedings, and inconsistent positions." *Id.* at 691. The first portion of this requirement is dispositive—a party must argue in favor of a particular position and win that argument before a court can consider implementing judicial estoppel. *See Cain Petroleum Inc. v. Zurich Am. Ins. Co.*, 197 P.3d 596, 601 (Or. Ct. App. 2008) ("[T]he fact remains that defendant did not prevail on that argument. . . we have no occasion to apply judicial estoppel."). The Debtors did not argue and win on the application of California law in the California case, nor did they somehow make a judicial admission that California law applies to their insurance policies, regardless of the insured risk. As discussed above, choice-of-law never was a disputed issue in the California case, and the mere citation of California law in that case fails to establish that California law should apply in this case.[2]

### 3. The OECAA Is Constitutional

The London Market Insurers raise for the first time in their Reply the argument that the OECAA is unconstitutional because it would violate the dormant Commerce Clause and the Contracts Clause of the United States Constitution. *See* Dkt. No. 50, at 10. Because they devote all of one page to this argument and did not provide the required statutory notice to the Oregon Attorney General (*see* Fed.R.Civ.Pro. 5.1), it appears that even the London Market Insurers do not take this argument seriously. Indeed, the OECAA was originally passed in 1999 and has been applied in numerous coverage disputes in Oregon, all without successful challenge to the constitutionality of this statute. The London Market Insurers' arguments that the OECAA is unconstitutional should be flatly rejected.

The United States Supreme Court has held that state laws regulating insurance are protected from Commerce Clause attacks. *See, e.g.*, *W. & S. Life Ins. Co. v. State Bd. of*

---

[2]   Notably, less than a year ago, a Delaware court rejected a very similar argument for collateral estoppel made by the London Market Insurers in another matter. *See Chemtura Corp. v. Certain Underwriters At Lloyd's*, No. N14C-12-210, 2016 WL 3884018, at *6 (Del. Super. Ct. Apr. 27, 2016) (rejecting argument that New York law controlled because New York law was applied in "decades of litigation" among the parties, where the prior actions did not involve a choice-of-law dispute, and "[i]mportantly, coverage was not sought for the environmental cleanup at the Arkansas and Ohio sites" at issue in the current litigation).

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

*Equalization of California*, 101 S. Ct. 2070, 2075 (1981) ("Congress removed all Commerce Clause limitations on the authority of the States to regulate and tax the business of insurance when it passed the McCarran-Ferguson Act[.]"); *Am. Ins. Ass'n v. Garamendi*, 123 S. Ct. 2374, 2394 (2003) ("As the text itself makes clear, the point of McCarran–Ferguson's legislative choice of leaving insurance regulation generally to the States was to limit congressional preemption under the commerce power, whether dormant or exercised."); *Grp. Life & Health Ins. Co. v. Royal Drug Co.*, 99 S. Ct. 1067, 1077 (1979) ("The McCarran-Ferguson Act operates to assure that the States are free to regulate insurance companies without fear of Commerce Clause attack."). In an attempt to support their argument, the London Market Insurers cite *Healy v. Beer Inst.,* 491 U.S. 324 (1989), (a case that has nothing to do with insurance) and *Aetna Life Ins. Co. v. Dunken*, 266 U.S. 389 (1924) (a case decided in 1924, more than twenty years *before* Congress enacted McCarran-Ferguson). Dkt. No. 50, at 10-11. Their reliance on these cases is misplaced. It is clear that the dormant Commerce Clause does not invalidate the OECAA.

Similarly, the Contracts Clause does not invalidate the OECAA. On the contrary, the Ninth Circuit already has determined that the OECAA does not violate the Contracts Clause when applied to an issue that is not addressed in an insurance contract. *Anderson Bros. Inc. v. St. Paul Fire & Marine Ins. Co.*, 729 F.3d 923, 935-36 (9th Cir. 2013). In *Anderson Brothers*, an insurer argued that the OECAA's definition of "suit," a term that was not defined in the policy, altered the insurer's "contractual commitments under the Policies." *Id.* The court disagreed, noting that "OECAA's definition of 'suit' applies only when the parties did not have any intent with respect to the meaning of the word 'suit.'" *Id.* at 936 ("Therefore, St. Paul's rights under the Policies are not diminished by our resort to OECAA's definition of 'suit.'"). Because the policies here are silent as to choice of law, application of OECAA cannot violate the Contracts Clause because it does not alter or impair the policies. *See also Schniedwind v. Am. Family Mut. Ins. Co.*, 157 F. Supp. 3d 944, 952-54 (D. Colo. 2016) (holding that Colorado statute did not

4845-3547-7309.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

violate Contracts Clause even though it directly contradicted insurance policy because the statute "serve[d] a legitimate public purpose").

Application of the OECAA and its direction that Oregon law governs this dispute with respect to the St. Helens site cannot "impair" any rights under the insurance policies at issue because the policies are silent as to choice of law. Accordingly, the OECAA's mandate that Oregon law should apply does not contravene any preexisting clause in the insurance contracts. Thus, the Court should reject the London Market Insurers' argument as a red herring.

Finally, the Insurers' argument that the OECAA is unconstitutional underscores how inappropriate transfer to the North Carolina Bankruptcy Court would be. The North Carolina Court has no interest in the important Oregon state law considerations underlying the OECAA, and the Bankruptcy Court should not be required to spend its limited resources addressing this issue.

### 4.     The Presumption in Favor of the Home Forum is Not Controlling

The London Market Insurers overstate the "home court" presumption when they argue in their Reply that "Ninth Circuit courts routinely apply the [home court] presumption and transfer non-core, related-to cases to the home bankruptcy forum when a non-debtor moves to transfer---even when the debtor opposes transfer." Dkt. No. 50, at 3. The London Market Insurers cite three cases in support of this misleading statement, none of which stands for the proposition cited:

- The London Market Insurers cite *Tapia v. Davol, Inc.*, No. 15CV179-GPC(JLB), 2016 WL 3924011 (S.D. Cal. July 21, 2016) as one case in which the court transferred the case over debtor's opposition. Dkt. No. 50, at 3. But the *Tapia* court stated that the debtor/plaintiff "***did not*** file an opposition to Defendants' motion to transfer venue." *Id.* at *3 (emphasis added). Rather, "the parties agree[d] that the claims in [that] case belong[ed] with the bankruptcy case." *Id.*
- Likewise, the Insurers cite *Bunsow v. Davis*, No. 12-ap-3113, 2012 Bankr. LEXIS 5280 (Bankr. N.D. Cal. Oct. 31, 2012) as a purported example in which the court transferred the case to the home court over the debtor's opposition. *Bunsow* was an action by a non-debtor against another non-debtor. The debtor was not even a party to the action, and it certainly did not oppose the motion to transfer.

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Moreover, although the court in *Bunsow* transferred the case, it did not do so based on the home court presumption.

- The final case cited by the Insurers, *Jackson v. Fenway Partners, LLC*, No. C 13-00005 JSW, 2013 U.S. Dist. LEXIS 50454 (N.D. Cal. Apr. 8, 2013), also did not involve a debtor's objection to a motion to transfer. In *Jackson*, the debtor was a third-party defendant and did not oppose the motion to transfer.

Thus, these cases provide no support for the London Market Insurers' argument on the "home court" presumption and no basis for this Court to transfer a non-core, related-to proceeding to the Bankruptcy Court over the objections of both the Debtors and the Committee.

In assessing the presumption, the Court should consider the rationale underlying it. Specifically, as the court stated in *In re Harnischfeger Indus., Inc.*, 246 B.R. 421, 440 (Bankr. N.D. Ala. 2000), "[T]his presumption exists to help the debtor, not to facilitate forum-shopping for co-defendants." The presumption carries less weight when used to defeat a debtor's choice of forum because debtors are typically interested in the efficient administration of their own estates. Here, the Debtors determined, and the Committee agrees, that pursuing the coverage action in Oregon is in the best interests of the Debtors' estates because it will maximize the value of the insurance asset and permit the litigation to proceed in a court that can most efficiently and conveniently adjudicate the issues in this coverage dispute. Other courts have held the presumption should not be used against the debtor. *See, e.g., Hopkins v. Plant Insulation Co.*, 342 B.R. 703, 715 (D. Del. 2006) ("[T]he Debtor in this case[] has selected a forum different than its pending bankruptcy case, and the Court is not persuaded that the home court presumption should be used against the Debtor to invalidate its choice of forum for litigation in these circumstances.").

Even if the presumption applies, it is just one factor to be considered in deciding the Motion to Transfer, and it is not sufficient to outweigh the factors that support remand to the Oregon state court.

4845-3547-7309.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

### 5. Oregon Has a Strong Interest in Adjudicating This Action

Rather than proffering an argument that the interests of justice actually support transfer of this case, the Insurers instead argue that Oregon has a "diminished" interest in the dispute because of the bankruptcy filing. Dkt. No. 50, at 8. Not surprisingly, the Insurers fail to provide any case support for the misguided notion that a state's interest in alleged environmental contamination within its borders becomes diminished by the filing of a bankruptcy case. Rather, the London Market Insurers cite *McGillis/Eckman Invs. - Billings, LLC v. Sportsman's Warehouse, Inc.*, No. CV-10-26-BLG-RFC, 2010 U.S. Dist. LEXIS 80809 (D. Mont. Aug. 9, 2010), a case that did not involve a coverage dispute, let alone environmental contamination. In that case, the plaintiff had pre-petition and post-petition commercial lease agreements with the defendant-debtor in Montana. The bankruptcy court entered an order authorizing the defendant-debtor to assume the lease, and the plaintiff subsequently filed a lawsuit seeking specific performance of a purchase provision in the lease. *Id.* at *2-3. In granting transfer to the Bankruptcy Court for the District of Delaware, the court noted that Montana's interest in the case was diminished because "[a]t its core, this case implicates the interpretation, implementation, and administration of the Delaware Bankruptcy Court's orders and the bankruptcy code." Id. at *18-19. In other words, the plaintiff's claims "implicate[d] the validity of the [Bankruptcy Court's] Order . . . [and] the implementation of the Reorganization plan." *Id.* at 18. This rationale does not apply here. The coverage determinations in this case will not hinge on any interpretation of orders of the Bankruptcy Court.

The London Market Insurers' reliance on *Jackson v. Fenway Partners, LLC*, No. C-13-00005-JSW, 2013 U.S. Dist. LEXIS 50454 (N.D. Cal. Apr. 8, 2013), is similarly misplaced. That case concerned a class action complaint filed in California implicating both state and federal law claims. *See id.* at *4. Although the court decided to transfer the case to the bankruptcy court, it did not claim that California had a "diminished" interest in the case because

4845-3547-7309.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

of the related bankruptcy case. In fact, the court acknowledged California's interest in the case, stating that "[t]he 'local controversies' factor does weigh against transfer." *Id.* at \*10-11.

In sum, the Insurers cannot offer any authority that the filing of the bankruptcy in any way reduces Oregon's statutorily professed interest in the availability of insurance coverage for environmental sites within its state.

## II.    The London Market Insurers Have Not Met Their Burden of Establishing that the Western District of North Carolina Is a More Convenient Venue

To meet their burden on the Motion, the London Market Insurers must establish not only that the Debtors' choice of forum is inconvenient, but also that the North Carolina venue is, in fact, "more convenient." *See In re DRI Cos.*, 552 B.R. at 197. Putting aside that neither the Debtors, the Unsecured Creditors Committee, nor multiple other Defendant Insurers agrees with their position, the fact remains that London Market Insurers wholly fail to meet their legal burden as they provide no support for why North Carolina would be a *more* convenient venue than the jurisdiction in which a Site and many of the witnesses and documents are located.

The declaration of coverage counsel submitted by the London Market Insurers misses the mark. According to it, this dispute focuses on the interpretation of the policies, but that is far too narrow a characterization. This dispute focuses on the application of the policies to the Sites. Insurers' counsel then attests that he is aware of no witnesses residing in Oregon who were involved in the negotiation or underwriting of the policies. This assertion is irrelevant because it does not establish that North Carolina is a *more* convenient forum. Apart from that, the Insurers offer no evidence that the policies were negotiated at all, and given that they are standard-form policies, it is likely that they were not. Further, the oldest policies here were issued more than 75 years ago, with the most recent policies issued nearly 30 years ago. The declaration does not attest that any witnesses involved in the issuance of the policies can even be located. More importantly, there is no evidence that any such witnesses reside in North Carolina.

4845-3547-7309.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

And the London Market Insurers' Reply entirely ignores the importance of the location of key fact witness with knowledge of the historical operations of the St. Helen's Site, the facilities at the Lower Duwamish Site, and the present-day investigation and remediation of the Sites. Such witnesses will provide evidence regarding some of the key issues in this coverage dispute, including, without limitation, (i) whether Kaiser "expected or intended" the property damage for which it is seeking coverage; (ii) whether Kaiser's investigation and remediation actions have been reasonable; (iii) whether a continuous damage process has been occurring at the Sites so as to trigger all of the insurance policies in Kaiser's program; (iv) whether the extent and nature of the property damage is within "owned property" exclusions in certain of the policies, and (v) whether the contamination at the Sites was "sudden and accidental" or otherwise exempted from certain pollution exclusions in the policies. What the Insurers fail to acknowledge is that the policy terms cannot be interpreted in a vacuum and must be applied to site-specific facts when considering whether coverage is available. The witnesses who can address these and other critical coverage issues are in Oregon and Washington, not in North California, and no colorable argument can be made that North Carolina is a more convenient forum.

The Insurers also argue that Oregon is less convenient for the Debtors because proceeding in Oregon requires the Debtors to retain multiple law firms. Again, this argument is factually incomplete and inaccurate. Proceeding in Oregon is more efficient for the Debtors because that venue allows Debtors to continue use their long-time Oregon coverage counsel, Miller Nash Graham & Dunn LLP ("Miller Nash"). Miller Nash has represented the Debtors with regard to their environmental liabilities at the Sites, including matters involving insurance coverage for the Sites, since 2001. *See* Debtors' Application for an Order Authorizing Them to Retain and Employ Miller Nash Graham & Dunn LLP as Special Environmental and Insurance Counsel as of the Petition Date, ¶ 9. Miller Nash is consequently familiar with various legal and factual matters relevant to the Debtors' environmental liabilities and insurance coverage. *Id.* As

4845-3547-7309.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND AND OREGON 97204

a result, the employment of Miller Nash enables the Debtors to avoid the unnecessary expense

that would result from having another law firm familiarize itself with those matters. *Id.* The

Debtors retained Miller Nash over 15 years before filing their petitions and renewed that

retention in the bankruptcy proceedings because it is in the best interests of their estates, a fact

that the Insurers cannot refute.

## CONCLUSION

For these reasons and the reasons set forth herein and in the Debtors' Opposition

Brief to the London Market Insurers' Motion to Transfer, transfer is inappropriate. The Debtors

4845-3547-7309.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

respectfully request that the Court deny the London Market Insurers' Motion to Transfer and grant the Debtors' Motion to Remand.

DATED this 30th day of November, 2016.

MILLER NASH GRAHAM & DUNN LLP

/s/ C. Marie Eckert
C. Marie Eckert, P.C., OSB No. 883490
marie.eckert@millernash.com
Phone: 503.224.5858
Fax: 503.224.0155

Kay M. Brady (pro hac vice)
kay.brady@klgates.com
Michael J. Lynch (pro hac vice)
michael.lynch@klgates.com
D. Syed Ali (pro hac vice)
Syed.ali@klgates.com
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Telephone: (412) 355-6500
Facsimile: (412) 355-6501

Attorneys for Plaintiffs Kaiser Gypsum Company, Inc. and Hanson Permanente Cement, Inc. (f/k/a Kaiser Cement Corporation)

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Case 16-03127-rld   Doc 94   Filed 11/30/16

C. Marie Eckert, P.C., OSB No. 883490
marie.eckert@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  503.224.5858
Fax:  503.224.0155

Kay M. Brady (*pro hac vice*)
kay.brady@klgates.com
Michael J. Lynch (*pro hac vice*)
michael.lynch@klgates.com
D. Syed Ali (*pro hac vice*)
syed.ali@klgates.com
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Telephone:  (412) 355-6500

Attorneys for Plaintiffs Kaiser Gypsum Company,
Inc. and Hanson Permanente Cement, Inc.


UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>OUT OF DISTRICT & BANKRUPTCY CASE<br><br>KAISER GYPSUM COMPANY, INC., and HANSON PERMANENTE CEMENT, INC. (f/k/a Kaiser Cement Corporation),<br><br>     Debtors. | Adv. Proc. No. 16-03127-rld<br><br>Chapter 11<br><br>DECLARATION OF PHILIP E. COOK |
| KAISER GYPSUM COMPANY, INC., and HANSON PERMANENTE CEMENT, INC. (f/k/a Kaiser Cement | |

**Page 1 of 4**  Declaration of Philip E. Cook

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Corporation),

        Plaintiffs,

v.

AIU INSURANCE COMPANY et al.,

        Defendants.

I, Philip E. Cook, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am a member in good standing of the State Bar of California and am admitted to practice before all courts in California, including all United States District Courts and the Ninth Circuit. I am the Managing Attorney at The Cook Law Firm, P.C., and have since 2001 been counsel of record for Kaiser Gypsum Company and Hanson Permanente Cement (previously known as Kaiser Cement and Gypsum Corporation) (together, the "Debtors") in the coverage action captioned *Truck Ins. Exchange v. Kaiser Cement and Gypsum Corp., et al.*, Los Angeles County Superior Court Case No. BC249550 (the "California Asbestos Coverage Action").

2.     I submit this Declaration in support of the Debtors' Opposition to the Motion to Transfer. I am over the age of 18 years old and have personal knowledge of the following matters. If called as a witness in this matter, I could and would competently testify to each of them.

3.     As Debtors' counsel in the California Asbestos Coverage Action, I have become familiar with the Debtors' various insurance policies, as well as the history of the Debtors' insurance programs. I am also familiar with the Debtors' involvement in the Oregon litigation concerning insurance coverage for environmental liabilities at sites in Oregon and Washington.

4.     In the early years of the Debtors' insurance program, they were sold a number of insurance policies that provided only coverage for property damage. The Debtors separately were sold insurance policies that covered bodily injury or products hazard loss.

**Page 2 of 4**   Declaration of Philip E. Cook

4817-4017-0045.4

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Case 16-03127-rld Doc 94 Filed 11/30/16

5.      None of the first-layer policies providing property damage coverage for the period 1940-1964 that is alleged in the Oregon environmental coverage action was at issue in the California Asbestos Coverage Action. Instead, primary policies covering the period before 1965 were issued to the Debtors by Fireman's Fund Insurance Company, and it was those policies and their coverage of asbestos bodily injury claims that were at issue in the California Asbestos Coverage Action.

6.      Similarly, none of the excess policies providing property damage coverage before 1958 that is alleged in this matter was at issue in the California Asbestos Coverage Action.

7.      In addition to the "property damage only" policies referenced in paragraphs 5 and 6, above, most of the Debtors' other insurance policies that are at issue in this matter provide separate limits for property damage, on the one hand, and bodily injury or products hazard losses, on the other hand.

8.      The Debtors' insurance policies that are at issue in this matter afford coverage separately for an "occurrence" or an "accident." Under the terms of those policies, the occurrences or accidents that give rise to the Debtors' environmental liabilities in Oregon and Washington are distinct from those that give rise to asbestos-related bodily injury or product hazard claims.

9.      The provisions of the Debtors' insurance policies that apply to or may be relevant to determining coverage for environmental property damage loss are generally different from those policy provisions that were litigated in the California Asbestos Coverage Actions. For instance, the facts that constitute an "occurrence" and what triggers coverage under any of the Debtors' insurance policies will be a completely different analysis for environmental coverage in this matter, and no determination in the California Asbestos Coverage Action will be relevant to that issue.  Similarly, issues litigated in the California Asbestos Coverage Action shed no light on how environmental liabilities in Oregon or Washington are covered under the Debtors' insurance policies for issues like:  (i) whether the Debtors "expected or intended" the property

**Page 3 of 4**   Declaration of Philip E. Cook

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

damage for which they seek coverage; (ii) how damage occurring at the Sites "triggers" coverage under Debtors' various insurance policies in Kaiser's program; (iii) whether the property damage is within "owned property" exclusions in certain of the policies; and (iv) whether contamination at the Sites was "sudden and accidental" or otherwise exempted from certain pollution exclusions in the policies.

10.     At no time during the years in which the California Asbestos Coverage Action has been pending did the California trial or appellate courts ever adjudicate a choice-of-law question. Over the years, the parties to the California Asbestos Coverage Action all cited California law, as well as the law of other jurisdictions, in support of their various positions. A dispute about choice of law or the application of California law to the issues being litigated in the case never arose.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 30, 2016.


/s/ Philip E. Cook
Philip E. Cook

**Page 4 of 4**   Declaration of Philip E. Cook

4817-4017-0045.4

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

C. Marie Eckert, P.C., OSB No. 883490
marie.eckert@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: 503.224.5858
Fax: 503.224.0155

Kay M. Brady (*pro hac vice*)
kay.brady@klgates.com
Michael J. Lynch (*pro hac vice*)
michael.lynch@klgates.com
D. Syed Ali (*pro hac vice*)
syed.ali@klgates.com
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Telephone: (412) 355-6500

Attorneys for Plaintiffs Kaiser Gypsum Company,
Inc. and Hanson Permanente Cement, Inc.

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>OUT OF DISTRICT & BANKRUPTCY CASE<br><br>KAISER GYPSUM COMPANY, INC., and HANSON PERMANENTE CEMENT, INC. (f/k/a Kaiser Cement Corporation),<br><br>           Debtors.<br><br>KAISER GYPSUM COMPANY, INC., and HANSON PERMANENTE CEMENT, INC. (f/k/a Kaiser Cement | Adv. Proc. No. 16-03127-rld<br><br>Chapter 11<br><br>DECLARATION OF STEVEN F. HILL |

**Page 1 of 3**    Declaration of Steven F. Hill

4810-9247-8269.2

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Case 16-03127-rld    Doc 94    Filed 11/30/16

Corporation),

                Plaintiffs,

    v.

AIU INSURANCE COMPANY et al.,

                Defendants.

       I, Steven F. Hill, pursuant to 28 U.S.C. § 1746, declare as follows:

       1.      I am a partner with the law firm Miller Nash Graham & Dunn, LLP (formerly known as Miller Nash, LLP).  In 2001, I began working with Kaiser Gypsum Company, Inc. ("Kaiser") regarding environmental claims asserted by the Oregon Department of Environmental Quality and Armstrong World Industries ("AWI") related to the AWI fiberboard facility in St. Helens, Oregon (the "St. Helens Site").  I was also involved with putting Kaiser's insurers on notice of the DEQ and AWI environmental claims at the St. Helens site in 2002.

       2.      I have worked with Kaiser and Hanson Permanente Cement, Inc. regarding the Lower Duwamish Waterway Superfund Site ("LDW") since shortly after they received CERCLA Section 104(e) information requests from the U.S. Environmental Protection Agency in February 2010.  I was also involved with putting their insurers on notice of the EPA information requests in 2010.

**Page 2 of 3**    Declaration of Steven F. Hill

4810-9247-8269.2

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Case 16-03127-rld    Doc 94    Filed 11/30/16

3.      Attached as Exhibit 1 to this declaration is a true and correct copy of a letter dated October 31, 2012, that I received from Sara Hall, a representative of Truck Insurance Exchange, regarding insurance coverage issues at the LDW site.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 30, 2016.

/s/ Steven F. Hill
Steven F. Hill

**Page 3 of 3**    Declaration of Steven F. Hill

4810-9247-8269.2

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Case 16-03127-rld    Doc 94    Filed 11/30/16

 **FARMERS**

Sara Hall
Farmers Insurance Exchange
31051 Agoura Road
Westlake Village, CA 91361
Tel: (818) 874-1990

October 31, 2012

RECEIVED

NOV - 1 2012

MILLER NASH LLP

Mr. Steve Hill
MILLER NASH
500 Broadway Street, Suite 400
Vancouver, Washington 58660-3324

RE:    Kaiser Gypsum and Kaiser Cement, Lower Duwamish

Dear Mr. Hill,

As a follow up to our recent email exchanges Truck Insurance Exchange ("Truck") makes the payments enclosed pursuant to a full reservation of rights. As you know Truck makes these payments in response to the tender by your office for reimbursement from co-carriers on behalf of Kaiser Cement Corporation and Kaiser Gypsum Company Inc. for fees incurred in responding to the U.S. Environmental Protection Agency's ("EPA")'s 104(e) requests. As we previously informed you, Washington law supports the allocation of defense fees equally among co-carriers. Accordingly, although we reserve our rights as to whether these fees qualify as "defense" fees under Washington law, and we do not agree with the hourly rate charged, we are issuing our payment for our equal share of the fees asserted in the interest of equity.

Enclosed herewith are four checks. Two checks are intended to pay Kaiser Cement a total of $34,695.70 (each check is in the amount of $17,347.85). Two checks are intended to pay Kaiser Gypsum a total of $25,888.85 (one check is in the amount of $12,944.42 and one is in the amount of $12,944.43).

If you have any questions, please feel free to give me a call.

Very truly yours,
TRUCK INSURANCE EXCHANGE

Sara Hall

Enclosures

POCATELLO SERVICE CENTER

Check Number: 1601136325
Date: 10/30/2012

PAY  NON-NEGOTIABLE NON-NEGOTIABLE NON-NEGOTIABLE NON-NEGOTIABLE
NON-NEGOTIABLE NON-NEGOTIABLE NON-NEGOTIABLE NON-NEGOTIABLE  $12,944.42***

To
the
order
of

Hanson Permanente Cement Inc
111 SW 5TH AVE FL 5
PORTLAND, OR, 97204-3645

**RECEIVED**

NOV - 1 2012

MILLER NASH LLP

| | |
|---|---|
| Claimant/Patient: | - Usepa |
| Insured: | - Kaiser Cement |
| Date of Loss: | 12/30/1964 |
| Claim Unit Number: | 1020649331-1-1 |
| Check Number: | 1601136325 |
| Payment Under Insured's: | Legal Expense Reserve |
| Correspondence Reference: | H190HBZD |
| Print Date | 10/30/2012 02:35 PM |
| Requested By | Ellen Cooper |

73-0282 2-10

## FARMERS

62-20/311

Truck Insurance Exchange
POCATELLO SERVICE CENTER
2500 SOUTH FIFTH AVENUE
POCATELLO ID 83204

Claim Unit #
1020649331-1-1

Check No. 1601136325

Date: 10/30/2012

PAY  Twelve Thousand Nine Hundred Forty Four Dollars And Forty Two  $12,944.42***
Cents

NOT GOOD AFTER SIX MONTHS

FARMERS

To
the
order
of

Hanson Permanente Cement Inc
111 SW 5TH AVE FL 5
PORTLAND, OR, 97204-3645

Citibank N.A. - One Penns Way - New Castle, DE 19720

THE ORIGINAL DOCUMENT HAS A REFLECTIVE WATERMARK ON THE BACK.  HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.



Exhibit 1
Page 2 of 5

RECEIVED

NOV ⁻1 2012

MILLER NASH LLP

| | | |
|---|---|---|
| Check Number: | **8210052050** | |
| Date: | 10/30/2012 | |

**PAY** NON-NEGOTIABLE NON-NEGOTIABLE NON-NEGOTIABLE NON-NEGOTIABLE
NON-NEGOTIABLE NON-NEGOTIABLE NON-NEGOTIABLE NON-NEGOTIABLE      $17,347.85***

To
the      Hanson Permanente Cement, Inc
order   111 SW 5th Ave Fl 5
of      Portland, Or 97204-3645

| | |
|---|---|
| Claimant/Patient: | - Usepa |
| Insured: | - Kaiser Cement |
| Date of Loss: | 12/31/1964 |
| Claim Number: | 1020643348-1 |
| Check Number: | 8210052050 |
| Payment Under Insured's: | Legal Expense Reserve |
| Correspondence Reference: | 5DXZL4XD |
| Reference Number: | . |

73-0282 2-10

 **FARMERS**

62-20/311

Truck Insurance Exchange      Claim #:  1020643348-1      **Check No. 8210052050**
                              SALN:    Y6056128
2500 South Fifth Avenue
Pocatello, ID  83204                                          Date: 10/30/2012

**PAY**  Seventeen Thousand Three Hundred Forty Seven Dollars And    $17,347.85***
         Eighty Five Cents
                          NOT GOOD AFTER SIX MONTHS

To
the      Hanson Permanente Cement, Inc
order   111 SW 5th Ave Fl 5
of      Portland, Or 97204-3645

Citibank Delaware, A Subsidiary of Citicorp One Penn's Way, New Castle, DE  19720

THE ORIGINAL DOCUMENT HAS A REFLECTIVE WATERMARK ON THE BACK.      HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.

⑈821005 2050⑈ ⑆0000000000⑆ Doc 94   Filed 11/30/16

**Exhibit 1**
**Page 3 of 5**

RECEIVED

NOV - 1 2012

MILLER NASH LLP

| | Check Number: | 8210052049 |
| --- | --- | --- |
| | Date: | 10/30/2012 |

**PAY** NON-NEGOTIABLE NON-NEGOTIABLE NON-NEGOTIABLE NON-NEGOTIABLE $17,347.85***
NON-NEGOTIABLE NON-NEGOTIABLE NON-NEGOTIABLE NON-NEGOTIABLE

To
the    .
order    Hanson Permanente Cement, Inc
of      111 SW 5th Ave Fl 5
       Portland, or 97204-3645

| Claimant/Patient: | - Usepa |
| --- | --- |
| Insured: | - Kaiser Cement |
| Date of Loss: | 01/01/1965 |
| Claim Number: | 1020878368-1 |
| Check Number: | 8210052049 |
| Payment Under Insured's: | Legal Expense Reserve |
| Correspondence Reference: | 5XXD$4XD |
| Reference Number: | . |

73-0282 2-10



## FARMERS

62-20/311

Truck Insurance Exchange      Claim #:   1020878368-1     **Check No.** 8210052049

2500 South Fifth Avenue       SALN:     Y6056371
Pocatello, ID 83204                                   **Date:** 10/30/2012

**PAY**    Seventeen Thousand Three Hundred Forty Seven Dollars And    $17,347.85***
       Eighty Five Cents
NOT GOOD AFTER SIX MONTHS

To
the    .
order    Hanson Permanente Cement, Inc
of      111 SW 5th Ave Fl 5
       Portland, or 97204-3645

Citibank Delaware, A Subsidiary of Citicorp One Penn's Way, New Castle, DE 19720

THE ORIGINAL DOCUMENT HAS A REFLECTIVE WATERMARK ON THE BACK.     HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.

Case 16-06027-FLK   Doc 94   Filed 11/30/16

**Exhibit 1**

**Page 4 of 5**

POCATELLO SERVICE CENTER

Check Number: 1601136327
Date: 10/30/2012

PAY NON-NEGOTIABLE NON-NEGOTIABLE NON-NEGOTIABLE NON-NEGOTIABLE
NON-NEGOTIABLE NON-NEGOTIABLE NON-NEGOTIABLE NON-NEGOTIABLE   $12,944.43***

To
the
order
of

Hanson Permanente Cement Inc
111 SW 5TH AVE FL 5
PORTLAND, OR, 97204-3645

**RECEIVED**

NOV - 1 2012

MILLER NASH LLP

| | |
|---|---|
| Claimant/Patient: | - Usepa |
| Insured: | - Kaiser Cement |
| Date of Loss: | 02/28/1969 |
| Claim Unit Number: | 1020900646-1-1 |
| Check Number: | 1601136327 |
| Payment Under Insured's: | Legal Expense Reserve |
| Correspondence Reference: | TR94RRZD |
| Print Date | 10/30/2012 02:33 PM |
| Requested By | Ellen Cooper |

73-0282 2-10

**FARMERS**

62-20/311

Truck Insurance Exchange
POCATELLO SERVICE CENTER
2500 SOUTH FIFTH AVENUE
POCATELLO ID 83204

Claim Unit #
1020900646-1-1

Check No. 1601136327

Date: 10/30/2012

PAY   Twelve Thousand Nine Hundred Forty Four Dollars And Forty
Three Cents   $12,944.43***

NOT GOOD AFTER SIX MONTHS

To
the
order
of

Hanson Permanente Cement Inc
111 SW 5TH AVE FL 5
PORTLAND, OR, 97204-3645

Citibank N.A. - One Penns Way - New Castle, DE 19720

THE ORIGINAL DOCUMENT HAS A REFLECTIVE WATERMARK ON THE BACK.      HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.

I hereby certify that I served the foregoing Plaintiffs' Sur-Reply in Opposition to London Market Insurers' Motion to Transfer Venue, Declaration of Philip E. Cook, and Declaration of Steven F. Hill on:

- SYED D ALI    syed.ali@klgates.com
- JAY WILLIAM BEATTIE    jbeattie@lindsayhart.com, cweeks@lindsayhart.com;kkusch@lindsayhart.com
- KAY M BRADY    kay.brady@klgates.com, lisa.bozovich@klgates.com
- THOMAS W BROWN    tbrown@cosgravelaw.com, jvs@cvk-law.com
- LAWRENCE B BURKE    larryburke@dwt.com, chrispellechi@dwt.com;pdxdocket@dwt.com
- C MARIE ECKERT    marie.eckert@millernash.com, jeannie.peurasaari@millernash.com
- DAMON L. HENRIE    dhenrie@henriesmith.com
- ADAM JONES    ajones@FoUm.law
- BRIAN A KELLY    bakelly@duanemorris.com, mrrureta@duanemorris.com
- RICHARD A LEE    lee@bodyfeltmount.com, slater@bodyfeltmount.com
- HOWARD M LEVINE    hlevine@sussmanshank.com, jhume@sussmanshank.com,ecf.howard.levine@sussmanshank.com
- PETER MINTZER    pmintzer@selmanlaw.com
- KAREN O'KASEY    kok@hartwagner.com, drc@hartwagner.com
- DOUGLAS R PAHL    dpahl@perkinscoie.com, etherrien@perkinscoie.com;docketpor@perkinscoie.com
- BRANDY A SARGENT    basargent@stoel.com, docketclerk@stoel.com;erheaston@stoel.com
- DAVID M. SCHOEGGL    schoeggld@lanepowell.com, rosenkranzl@lanepowell.com
- STEVEN P SOHA    soha@sohalang.com
- BRENDAN WINSLOW-NASON    bwinslow-nason@cozen.com, jmcdougall@cozen.com;sumiller@cozen.com;nbugaighis@cozen.com;lnyamashita@cozen.com;dfinafrock@cozen.com

by the following indicated method or methods on the date set forth below:

☒    **CM/ECF system transmission.**

☐    **E-mail.** As required by Local Rule 5.2, any interrogatories, requests for production, or requests for admission were e-mailed in Word or WordPerfect format, not in PDF, unless otherwise agreed to by the parties.

☐    **Facsimile communication device.**

Page 1 -    Certificate of Service

4845-3547-7309.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 503.224.5858 | F: 503.224.0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Case 16-03127-rld    Doc 94    Filed 11/30/16

☐     **First-class mail, postage prepaid.**


and on the following via:

☒     **First-class mail, postage prepaid.**


Assurance Compagniet Baltica-Skandinavia Aktieselskab
c/o Tryg A/S
Klausdalsbrovej 601, Postboks 199
2750 Ballerup
Denmark

MICHAEL L DUFFY
10 S LaSalle St
Chicago, IL 60603

Executive Risk Indemnity, Inc.
436 Walnut St
Philadelphia, PA 19106

GREGORY M GORDON
2727 North Harwood
Dallas, TX 75201

JEFF D KAHANE
Duane Morris LLP
865 S Figueroa St #3100
Los Angeles, CA 90017

JUSTIN F LAVELLA
1825 Eye St NW
Washington, DC 20006

MICHAEL J LYNCH
K&L Gates Center
210 Sixth Ave
Pittsburgh, PA 15222

JODI A McDOUGALL
999 Third Ave #1900

4845-3547-7309.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 503.224.5858 | F: 503.224.0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Seattle, WA 98104-4028

Munich Reinsurance America, Inc.
555 College Rd East
Princeton, NJ 08543-5241
AMY R PAULUS
10 S LaSalle St
Chicago, IL 60603-1098

MARK D PLEVIN
275 Battery St, 23rd Flr
San Francisco, CA 94111

JEFFREY RHODES
1825 Eye St NW
Washington, DC 20006

RUSSELL W ROTEN
Duane Morris LLP
865 S Figueroa St #3100
Los Angeles, CA 90017

Westport Insurance Corporation
5200 Metcalf Ave
Overland Park, KS 66202-1391

DATED this 30th day of November, 2016.

/s/ C. Marie Eckert
C. Marie Eckert, OSB No. 883490
marie.eckert@millernash.com
Phone:  (503) 224-5858
Fax:  (503) 224-0155

Attorneys for Plaintiffs Kaiser Gypsum
Company, Inc. and Hanson Permanente
Cement, Inc. (f/k/a Kaiser Cement
Corporation)

4845-3547-7309.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 503.224.5858 | F: 503.224.0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204